Peter MANOS, Administrator of the Estate of Mike Manos, deceased, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., a corporation, and Boeing Company, a corporation, Defendants.

Walter A. SCHANKE, as the Heir at Law and Next of Kin of Ellen C. Schanke, Philip Schanke, Elaine M. Schanke and Paul Eugene Schanke, and Walter A. Schanke, as Administrator of the Estates of Ellen C. Schanke, Philip Schanke, Elaine M. Schanke and Paul Eugene Schanke, Plaintiff,

v.

BOEING COMPANY, a corporation, Defendant.

Loretta GARTLEY, Plaintiff,

v.

BOEING COMPANY, a corporation, Defendant.

Elizabeth NESSLER, as Administrator of the Estates of Keith Burruss Trotter, Deceased, Patricia Faye Trotter, Deceased, Bonnie Lou Trotter, Deceased, Janet Ann Trotter, Deceased, and Keith Burruss Trotter, Jr., Deceased, Plaintiff,

v.

BOEING COMPANY, a corporation, Defendant.

Bryan R. McCARTHY, as Administrator of the Estate of Eleanor W. Flegal, Deceased, and Bryan R. McCarthy, as Executor of the Estate of Dorothy A. Flegal, Deceased, Plaintiff,

v.

BOEING COMPANY, a corporation, Defendant.

Nos. 65 C 1932, 66 C 1586–66 C 1589.

United States District Court
N. D. Illinois, E. D.

Dec. 18, 1968.

See also D.C., 295 F.Supp. 1170.

 

Jacobson, Leiberman, Levy & Baron, Chicago, Ill., for plaintiffs.

Heineke, Conklin & Schrader, Chicago, Ill., Mendes & Mount, Matthew J. Corrigan and Randolph O. Petgrave, New York City, for defendants.

## MEMORANDUM AND ORDER ON RELEASE ISSUES

ROBSON, District Judge.

Defendant Boeing Company has filed what is deemed by this court to be a motion for summary judgment in each of four of the cases arising out of the Rome, Italy, air crash disaster: Schanke v. Boeing Co. (66 C 1586), Gartley v. Boeing Co. (66 C 1587), Nessler v. Boeing Co. (66 C 1588), and McCarthy v. Boeing Co. (66 C 1589). In each of these four cases, documents were signed which amount to limited or general releases. Boeing, through its counsel in New York, alleges that there are other cases in which similar releases were signed. These other cases, of course, cannot be considered at this time. With respect to the four cases presently before the court, this court is of the opinion that the motions for summary judgment should be denied.

In *McCarthy*, Boeing agrees that there was a release only as to T.W. A. Boeing argues that federal law (as set forth in an antitrust case) supports its position that this plaintiff should have reserved his rights against Boeing. Dura Electric Lamp Co., Inc. v. Westinghouse Electric Corporation, 249 F.2d 5 (3rd Cir. 1957). Also see Twentieth Century-Fox Film Corporation v. Winchester Drive-In Theatre, Inc., 351 F.2d 925 (9th Cir. 1965). However, state law would apply in this instance, and both California and the District of Columbia laws (the two possible jurisdictions whose law would apply) make it clear that a release of only one tortfeasor does not release any other tortfeasor. See discussion below, and McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 664, 148 A.L.R. 1253 (1943). The *Mc-*

*Carthy* case, therefore, must withstand a motion for summary judgment.

In *Schanke*, Boeing agrees that the signed "Stipulation for Settlement" does not amount to a general release, but asserts that there are other documents yet to be forwarded from New York (or yet to be discovered in certain warehouses) which show that a general release was entered into. In short, pending further documentation, the *Schanke* case cannot be dismissed under California law, as discussed more fully below.

▇ In *Gartley* and *Nessler*, however, general releases were signed. Both sides agree that the Illinois conflict of laws principle should govern, Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941), although they disagree as to what that principle is. The plaintiffs cite the older Illinois cases which hold that the law of the place where the release was executed governs. E. G., Woodbury v. United States Casualty Co., 284 Ill. 227, 120 N.E. 8 (1918). In *Gartley*, this place is Kansas; in *Nessler*, it is California. However, Boeing points out that the plaintiff in *Gartley* is a citizen, resident and domiciliary of California, was employed by T.W.A. in California, and voted and filed her income tax returns in California. After her release from the hospital in Rome (where she stayed for over three months), she stopped to convalesce at her brother's home in Kansas, and there signed the release. In *Nessler*, the five decedents (a husband and wife, and their three children) were all citizens, residents and domiciliaries of Arizona, the wills were probated in Arizona, and administered by the Valley National Bank of Tucson, Arizona. There was a settlement reached in a suit brought only against T.W.A. in the Federal District Court in Arizona and, merely for the convenience of the mother and half-sister, the releases were signed in California, since they were California residents. The father, a resident of Washington, also signed a release in settlement of the Arizona suit, but neither side has disclosed where he signed the document.

Boeing argues from these facts that the law of California should apply in *Gartley* (the plaintiff says Kansas) and that Arizona law should apply in *Nessler* (the plaintiff says California). Boeing bases its argument on its reading of what the Illinois conflict of laws rule is, as evidenced by two recent cases. Graham v. General U. S. Grant Post No. 2665, 97 Ill.App.2d 139, 239 N.E.2d 856 (2nd Dist. 1968); and Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544 (1966). These cases, contends Boeing, show that Illinois has adopted the more modern view of the conflict of laws: the "most significant contacts" doctrine. In *Graham*, the court applied the Illinois Dram Shop Act where the accident occurred in Wisconsin, thereby overruling the doctrine that the law of the place of the accident (*lex loci delicti*) should govern. The court said that the wrongful conduct (selling liquor to an already intoxicated man) was completed with the sale, and that "the location of any injury caused by the intoxication, either within or without the State, is irrelevant." Id., 94 Ill.App.2d at 148, 239 N. E.2d at 861. This statement was completely in line with the opinion's severe criticism of the old *lex loci delicti* rule.

In Wartell v. Formusa, supra, the Illinois Supreme Court ruled that the Illinois law as to interspousal immunity (from torts committed during coverture) should apply, even though the accident occurred in Florida. The court did resolve this issue, even though it was presented with almost identical laws, and thus confronted what has been called a "false conflict." Cavers, The Choice-of-Law Process (1965), at 89. The court said, at 59, 213 N.E.2d at 545:

> "* * * The law of the place of the wrong should *of course* determine whether or not a tort has in fact been committed, but the distinct question of whether one spouse can maintain an action in tort against the other spouse is clearly a matter which should be governed by the law of the domicile of

the persons involved. Here the domicile is Illinois. *Illinois has the predominant interest* in the preservation of the husband-wife relationship of its citizens, and to apply the laws of Florida to the question * * * would be illogical and without a sound basis." (Emphasis added.)

The Illinois Supreme Court, through this opinion and the cases it cited therein, has indicated that, in certain situations, the interests of one state will be such as to override the inflexible *lex loci delicti* rule. Boeing urges that since, in *Gartley*, she was in Kansas only temporarily, and since, in *Nessler*, the survivors' convenience was the only interest served which caused the signing of the releases outside of Arizona, the places of execution of the releases were entirely fortuitous, and bear no relation to the true interests to be served. Cf. Pearson v. Northeast Airlines, Inc., 309 F.2d 553 (2d Cir. 1962).

■ This court agrees that in both cases the place of execution of the releases was fortuitous. The suit in *Nessler* was brought by the heirs and next-of-kin of the five decedents. This shows at least a colorable interest on the part of the states in which they lived, at least in the amount due these survivors. Cf. Watts v. Pioneer Corn Company, Inc., 342 F.2d 617, 620 (7th Cir. 1965). In *Nessler* especially, though, the action that was settled by the releases was an Arizona action, and the releases were signed outside of Arizona only to save the next-of-kin (who were parties to the Arizona action) from making the long trip to Tucson. In effect, therefore, the releases were really "executed" in Arizona, and thus Arizona law would apply in the *Nessler* case whether the "most significant contacts" standard or the *lex loci delicti* rule is used. Cf. Restatement, Conflict of Laws §§ 312, 321 (1934) *with* Restatement, Second, Conflict of Laws, Tentative Draft No. 6 (1964).

■ In *Gartley* the suit was brought, not by the heirs or the next-of-kin, but by the injured party herself. There is, therefore, no interest that a Kansas heir could assert as a cause of action as a result of the injuries sustained in *Gartley*. Kansas was merely a stopping-off point on the plaintiff's journey from the Rome hospital to her home in California. The "fortuity" of her signing the release in Kansas is thus only further emphasized. Cf. Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965).

It is this court's opinion that were the Illinois Supreme Court presented with the instant cases, in the light of Wartell v. Formusa, supra, and the citations and decision in Graham v. General U. S. Grant Post No. 2665, supra, it would not apply the law of the place of the execution of the releases in *Gartley* and *Nessler*. It now remains to determine the effect of a general release under the laws of California and Arizona.

■ In California, the law applicable to the *Gartley* case, a statute governs the effect to be given a release. A release or dismissal of one tortfeasor is not a discharge of any other tortfeasor "unless its terms so provide." West's Ann.Calif.Civ.Proc.Code, § 877(a) (1957). There is no explicit exclusion for a general release given by an employee to his employer, if the release by its terms operates to relieve other tortfeasors from liability. But *cf.* Wendel v. Chicago, Rock Island & Pacific Railroad Co., 170 Kan. 68, 223 P.2d 993 (1950). In the document signed in *Gartley*, "as part of the consideration of this release, all other persons, firms or corporations whatsoever" were also released. Plaintiffs' Brief, Gartley Exhibit A. The amount paid for the plaintiff's injuries was only $7,000. This amount was apparently a result of the operation of the Warsaw Convention, which limited the maximum liability of T.W.A. to about $8,291.87. Even though there was general language in the release, the size of the settlement and the fact that Boeing was not named specifically cast more than a shadow of doubt

on the intentions of the signing parties to compromise a potentially very large recovery against Boeing. This approach was set forth by Mr. Justice Rutledge (then on the Court of Appeals for the District of Columbia) in McKenna v. Austin, supra, 134 F.2d at 664:

" * * * Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If however the agreement's terms leave no room for doubt, the decision should be made as a matter of law."

The California courts have cited this attitude with approval, although they were then constrained by a now changed rule to hold the other way. Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876, 879, 880 (1944); Pellett v. Sonotone Corp., 26 Cal.2d 705, 160 P.2d 783, 786 (1945). Reading the document in its entirety, this court is convinced that, notwithstanding the general release language, at least a question of fact is raised as to the intended effect of the releases. Cf. Gomes v. Brodhurst, 394 F.2d 465, 467 (3rd Cir. 1968).

■ The above considerations apply with perhaps even more force in the *Nessler* case. There, a settlement was reached in a suit only against T.W.A. for $24,110, well below the maximum under the Warsaw Convention (not higher than $41,459.35). The two releases included "any and all persons, firms or corporations which may be responsible for their acts or omissions. * * *" Plaintiffs' Brief, Nessler Exhibit A. The phrase "their acts or omissions" infuses even more doubt into the terms of the document and casts an even longer shadow on the intentions of the parties to the releases. This phrase might mean that only those acts or omissions for which T.W.A. was responsible were released, if another firm or corporation had contributed to T.W.A.'s acts or omissions. In this case, however, Boeing's alleged acts had nothing to do with T.W.A.'s alleged negligence, but were independent, i. e., the alleged failure of certain Boeing manufactured parts to operate properly. E. g., Bowles v. Zimmer Mfg. Co., 277 F.2d 868, 872 (7th Cir. 1960). In short, this court is convinced that in *Nessler*, too, a fact question is presented as to the intentions of the parties to the release which cannot be resolved on a motion for summary judgment.

It is therefore ordered that the defendant Boeing Company's motions for summary judgment be, and they are hereby denied.