James S. **MORISON**, Plaintiff-Appellant,
v.
**GENERAL MOTORS CORPORATION,**
a Delaware Corp., Defend-
ant-Appellee.

No. 28625.

United States Court of Appeals,
Fifth Circuit.
June 11, 1970.

Larry Klein, West Palm Beach, Fla., for appellant.

Sam Daniels, Dixon, Bradford, Williams, McKay & Kimbrell, Charles A. Kimbrell, Miami, Fla., for appellee.

Before TUTTLE and CLARK, Circuit Judges, and EDENFIELD, District Judge.

TUTTLE, Circuit Judge:

This is an appeal from a summary judgment for the Defendant, General Motors, based on a release given by the Plaintiff-Appellant to a joint tort feasor following an automobile accident in which Morison suffered serious physical injuries.

The original claim by Morison was against Wilma C. Roach, who was the owner and driver of the automobile in which he was a passenger at the time of the collision of the automobile with the abutment of a bridge in Arkansas. Thereafter, State Farm Insurance Company, the public liability insuror for Wilma Roach, negotiated a settlement for damages with Morison and his attorney. The sum of $10,000 was paid to Morison, who then signed a release which specifically named Wilma Roach and Acel Clark, a witness, "their heirs, executors and administrators, agents and assigns and *all other persons, firms or corporations liable or who might be claimed to be liable * * ** for any and all claims, demands, damages, actions, courses of action, or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred," etc.[1] (Emphasis added.)

Some time later the injured passenger, Morison, filed suit in Florida against General Motors, his complaint alleging five counts of liability: I Negligence; II Strict Liability in Tort; III

---

1. The release also contained the following:
"Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed and otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

Breach of Express and Implied Warranties; IV Wanton and Wilful Misconduct and V Fraud and Misrepresentation. As to the first four counts he expressly alleged that the "collision was the proximate result of Defendant's negligence, * * * either solely or concurrently with the negligence of the driver" and that "his injuries were proximately caused by the sole negligence, carelessness, recklessness, wilfulness and/or wantonness of Defendant [GM], as hereinafter more specifically described, or in the alternative, Defendant's negligence concurred with that of the driver * * * to proximately cause the Plaintiff's injuries."

The appellant does not seriously contend that this suit was not against a "joint tortfeasor." He poses this question in his brief: "Does an 'All Persons, Firms or Corporations' Release Bar an Action Against a Joint Tort-Feasor Who Paid No Consideration for and Was Not Named in the Release?" Although the brief makes the bald statement that "There was also an issue of fact as to whether General Motors was the sole tortfeasor," Appellant clearly overlooks the following definition in the Uniform Joint Tort Feasors Act:

> "* * * two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

In response to a motion for summary judgment filed by Defendant, plaintiff and his "settling" counsel both filed affidavits asserting that they did not intend to release General Motors and that they did not negotiate any settlement with General Motors, and that General Motors paid no consideration for this release.

Both parties argue that the case is to be decided by Arkansas law. At the time of the injury and the release, Arkansas had adopted the Uniform Contribution Among Tort Feasors Act. The principal paragraph of this Act relied upon by Defendant provides as follows:

"34–1004. Release of one tortfeasor. —Effect on injured person's claim.— A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." Ark.Stats.1947, Sec. 34–1004.

There are no Arkansas cases or Federal Court cases announcing Arkansas law construing the words, "unless the release so provides" which deal with a release of "all other persons, firms or corporations liable, etc." The nearest case to this one before us and the one claimed by the injured party to expound the Arkansas law released *only* the *named persons* and then stated that the settlement was * * * "of any and all claims, actions, or causes of actions accruing to the Plaintiffs and arising out of the accident complained of." Allbright Bros. Contrs., Inc. for Use and Benefit of Nat. Sur. Corp. v. Hull-Dobbs Co., 6 Cir. (1953) 209 F.2d 103.

The only cases from other jurisdictions which contain the language releasing any and all persons in addition to the named parties hold that such language satisfies the requirement of the Act "unless the release so provides." They hold that "all" means "all" without requiring the insertion of the names of any and all other persons. See Hodges v. United States Fidelity and Guaranty Company (1952) Mun.Ct.D.C., 91 A.2d 473; Hasselrode v. Gnagey, 404 Pa. 549, 172 A.2d 764 (1961); Pemrock, Inc. v. Essco Co., Inc. (Md.1969) 249 A.2d 711; Peters v. Butler (1969) 253 Md. 7, 251 A.2d 600. We agree with this construction as announced in these cases.

At first blush the contention of the Plaintiff is an appealing one. Why should a release paid for by Wilma Roach and/or her insuror benefit General Motors which not only paid nothing

for the release, but probably, did not even know of it until long afterwards? However, the policy reasons that support the holdings of the courts which have construed the language to release all tortfeasors are clear when we consider additional provisions of the Uniform Act.[2]

Thus, it is clear that Wilma Roach and/or her insuror would lose substantial rights unless they obtained a complete release of *all* tortfeasors. They would give up their right to seek contribution from General Motors, for instance; and they would leave themselves open to an action for contribution to a judgment obtained by the Plaintiff against another tortfeasor. Thus, it may be assumed that the settlement would never have been made here unless the release of *all* joint tortfeasors was included.

Of course, it appears highly unlikely that parties situated as were Wilma Roach (whose settlement was paid by her insuror) and General Motors, if otherwise liable, would really have much interest in preserving these rights of contribution over against each other. However, we are construing a statute which must have application to all parties similarly situated—parties whose respective position and status might make the right of contribution a very valuable right.

Not only does the language of this particular release clause require the construction which we place upon it, but so, also, when the interdependent provisions of the law are construed, the logic supporting this construction is clear.

Moreover, an additional paragraph of the Arkansas statute is significant. It says:

"This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of these states that enact it." Acts 1941, No. 315, § 9, p. 788. See 34–1008, Laws of Arkansas.

As we read the cases of the states where the Act has been construed by the courts we conclude that we have carried out the mandate of Sect. 1008 by holding that this release satisfied the terms of the Act that provided for a release of all joint tortfeasors.

The judgment is affirmed.

2. "Section 2(3) and Section 5 of the Act (Laws of Ark., 1947, Sec. 34–1002(3) and Sec. 34–1005) are also important for present purposes. Section 2(3) provides:
34–1002. Right of Contribution—Accrual—Pro rata share—
(1) the right of contribution exists among joint tortfeasors.
 *      *      *      *      *
(3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.
Section 5 provides:

34–1005. Effect of release on right of contribution.—A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors." Uniform Joint Tort Feasors Act, Sect. 34–1001 through 34–1009 Ark.Stats.Anno.