## James GREEN et al *v.* Clyde A. FERGUSON et al

77-375            567 S.W. 2d 89

### Opinion delivered June 5, 1978
### (Division I)
[Rehearing denied July 10, 1978.]

*Mike Wilson,* of *Wilson, Dougherty & Mills, P.A.,* and *Tennant & Tomlinson,* for app'ellants.

*John T. Harmon,* for appellees.

FRANK HOLT, Justice. Appellees brought an action against appellants in circuit court to recover rentals allegedly due under their lease-purchase agreement. Appellants counterclaimed for specific performance of their twenty year lease-purchase agreement alleging appellees had refused to convey the property after they had exercised their option to purchase it. The case was transferred to chancery court where it was consolidated with an action brought by Twin City Bank against appellees and appellants to foreclose its construction loan mortgage. Appellees then nonsuited their circuit court action. In chancery court, appellants filed a cross-complaint against appellees in the consolidated action seeking specific performance of their option to purchase the property or, in the alternative, damages in the event appellees were unable to convey the property. A decree of foreclosure was entered against appellees for the balance owed (approximately $80,000) on the $85,000 construction loan mortgage. In a supplemental decree, the court dismissed appellants' cross-complaint, finding that appellants had not assumed the mortgage on the property within the meaning of the contract, because they had failed to tender the sum of the

existing balance on the mortgage to TCB, the mortgagee, by May 1, 1976. On appeal it is contended that the court erred in finding that appellants did not "assume the mortgage" on the property and, therefore, they were not entitled to specific performance nor damages in lieu of specific performance.

It appears the primary dispute between these litigants is the meaning of the phrase "assume the original mortgage" which appears in their agreement written on December 18, 1973. The pertinent part of the twenty year lease-purchase agreement provides:

> Lessee shall have the option to purchase the leased premises together with the building constructed thereon for the sum of the existing balance of the original mortgage with the Twin City Bank, together with any interest owing thereon at the time the option is exercised; said option to purchase, however, may be exercised only between November 1, 1974, and May 1, 1976.
> . . .

> In exercising this option Lessee shall have the right to assume the original mortgage on the property at the balance of the mortgage at time of assumption, together with any interest which may be owing thereon, with no other costs being assessed to Lessee.

The contract provided that "[u]pon receiving written notification of Lessee's [appellants'] exercise of this option to purchase" the appellees were required to convey the property by warranty deed to appellants within 120 days. The mortgage did not prohibit the conveyance of the property nor assumption of the mortgage debt.

Appellees argued and presented evidence that the intent of the parties when drafting the agreement was that, whenever the appellants exercised their option to purchase, they would become solely liable on the mortgage, and appellees would be released from any further liability. This would require that appellant either pay off the mortgage to TCB at the time the option was exercised or TCB would agree to release appellees. Therefore, appellees assert that, since appellants accomplished neither, they never properly

assumed the mortgage within the meaning of their agreement.

Appellants asserted and adduced evidence that, by the plain and unambiguous terms of the contract, they merely had to notify appellees in writing of their intent to exercise the option to assume the mortgage and make the required mortgage payments directly to TCB. Appellants point out that the agreement is silent as to whether they had to secure their own financing and pay off the mortgage or secure appellees' release from TCB. Appellants were unable to do either. Despite written demand, the appellees refused to convey the property absent their release from the mortgage. Further, appellants argue, they did in fact assume the mortgage by making lease payments, which equaled the mortgage payments, directly to TCB after exercising the option.

In *Trent v. Johnson,* 185 Ark. 288, 47 S.W. 2d 12 (1932), we discussed the personal liability of the mortgagor whenever there is an assumption of that indebtedness by the grantees. We said:

> It may be said, first, that it is well settled that the assumption by a grantee and the agreement by him to pay the mortgage debt does not, within itself, change the relationship of the mortgagor and mortgagee nor release the mortgagor from payment of the mortgage debt, and its collection may be enforced as long as the debt remains unpaid or until barred by limitation or laches. . . .

> [T]he well-settled doctrine in this State that the grantee of mortgaged lands who assumes and agrees to pay the debt secured by the mortgage becomes personally liable to the mortgagor for its payment. . . .

See also *Felker v. Rice,* 110 Ark. 70, 161 S.W. 162 (1913). In *Kendall House Apartments, Inc. v. The Department of Revenue,* 245 So. 2d 221 (Fla. 1971), it was aptly said:

> This court is well aware of the distinction, urged by relator, between a grantee who assumes and agrees to

pay an outstanding mortgage and a grantee who takes subject to an outstanding mortgage. The former may be held personally liable; the latter is threatened only with the loss of his equity in the property in the event of foreclosure. In the absence of clear language to the contrary on a deed conveying real property, a grantee who 'assumes' a mortgage encumbering real property becomes personally liable to pay same as though he is 'assuming and agreeing to pay' it.

It is well settled that whenever parties to a contract express their intention in clear and unambiguous language in a written instrument, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *C&A Const.* v. *Benning Const.*, 256 Ark. 621, 509 S.W. 2d 302 (1974); and *Miller* v. *Dyer*, 243 Ark. 981, 423 S.W. 2d 275 (1968). In the case at bar, the right to exercise the option is expressed in plain and unambiguous language. Even though there was conflicting verbal evidence interpreting the intent of the parties, it cannot alter the unambiguous language of the written contract. Therefore, the appellants had the right to exercise their option to purchase by the assumption of the mortgage without refinancing and paying off the mortgage or securing appellees' release from TCB on the mortgage. If the parties had intended either of those contingencies, the contract could have easily so provided.

Appellees argue that, even so, because of certain defaults on their lease agreement, the appellants could not exercise their option to purchase. We cannot consider this argument since it is raised for the first time on appeal. *Green* v. *Harrington*, 253 Ark. 496, 487 S.W. 2d 612 (1972).

Appellants contend they are entitled to damages for breach of contract in lieu of specific performance. The chancellor made no finding on the issue of damages since he found there was no breach of the contract. It is undisputed that appellees conveyed the land to another following the alleged breach of contract. It is well established that the measure of damages for a breach of contract to convey is based on the value of the land at the time of the breach. *Kempner* v. *Cohn*, 47 Ark. 519, 1 S.W. 869 (1886). Here appellants exer-

cised their right to purchase as of November 1, 1974. Appellees had four months from that date to convey title and failed and refused to do so. Appellants adduced evidence from an appraisor that the fair market value of the property was $193,151 "as of 1975," which figure, say appellants, would be reduced by the "mortgage indebtedness of $80,349 leaving an equity of [$102,803] of Appellants in the property." This asserted equity is the amount of damages sought by them. The appraiser did not know the property was encumbered by a twenty year lease-purchase option which he said could result in the property being "worth more or it may be worth less." Therefore, appellees argue that appellants did not sufficiently demonstrate the value of the property with respect to the date of the appraisal nor what effect the mortgage or the lease-purchase agreement had upon the value of the property. Ordinarily, we might agree with appellees. However, there is other evidence which should be considered with respect to the value of the property or damages in lieu of specific performance. It is undisputed that in March, 1975, some four months after appellants had exercised their option to purchase, appellees refused to sign appellants' proffered deed to the property, with assumption of the mortgage, at which time it appears the mortgage balance due to TCB for the original construction loan of $85,-000 was $80,349. It appears it became unnecessary to sell the property by a foreclosure sale. Appellees acquired possession and in January, 1977, conveyed the property to a relative of one of them for $165,000. Therefore, a difference of $85,651 ($165,000 - $80,349) existed based upon appellees' own sale of the property. In the unique circumstances, we hold appellants are entitled at least to this sum for its damages in lieu of specific performance of the contract.

Reversed and remanded with directions for proceedings not inconsistent with this opinion.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.