Roy Travis DOUGLAS, Executor of the Estate of Ada Clayborn, deceased, Appellant,

v.

UNITED STATES TOBACCO COMPANY, Appellee.

No. 81-1596.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1981.

Decided Feb. 10, 1982.

Gregory G. Smith (argued), Pryor, Robinson, Taylor & Barry, Fort Smith, Ark., for appellant.

Alston Jennings, Little Rock, Ark., and Edwin J. Jacob, New York City, for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and REGAN,[*] Senior District Judge.

McMILLIAN, Circuit Judge.

Roy Travis Douglas appeals from a summary judgment entered in the District Court[1] for the Western District of Arkansas based on a general release executed by appellant's decedent, Ada Clayborn.

For reversal appellant argues that the district court erred (1) in finding that the release complies with the provisions of Ark.

Stat.Ann. § 34–1001 *et seq.* (Uniform Contribution Among Tortfeasors Act) so as to discharge appellee United States Tobacco Co., and (2) in not allowing appellant to introduce parol evidence to prove that the parties to the release did not intend to discharge appellee. In response appellee argues that the general release barred any action against it and also that the terms of the release are unambiguous. For the reasons discussed below, we affirm the district court.

The original claim by appellant's decedent, Clayborn, was a malpractice action against the estate of Dr. Manley alleging that he failed to properly diagnose and treat Clayborn's oral cancer. In February 1973, Clayborn settled and dismissed the suit for the consideration of $5,000 and executed the following general release discharging:

> Mary B. Manley, as Administratrix of the Estate of R. H. Manley, Deceased, and his, her, their, or its agents, servants, successors, heirs, executors, administrators, and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any growing out of any and all known and unknown, forseen and unforseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the _____ day of _____, 1971, at or near Clarksville, Johnson County, Arkansas.

Clayborn subsequently initiated a negligence action against appellee based on its failure to warn snuff users of the potential carcinogenic effect of snuff.[2] Clayborn

---

[*] The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

[1] The Honorable Bruce M. Van Sickle, United States District Judge for the District of North

Dakota, sitting by special designation for the Western District of Arkansas.

[2] Initially Clayborn instituted a malpractice action against Dr. W. H. Lane, Jr., based on his failure to properly diagnose and treat her oral

died in 1977 and her executor, appellant, was substituted as plaintiff. On May 13, 1981, appellee first learned of the release and filed an amended answer asserting the affirmative defense of accord and satisfaction and also filed a motion for a summary judgment.

The parties agreed that the applicable law was Arkansas' Uniform Contribution Among Tortfeasors Act (Uniform Act), Ark.Stat.Ann. § 34–1001 *et seq.*, which provides in relevant part:

34–1002

(1) The right of contribution exists among joint tortfeasors.

(2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

(3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

\* \* \* \* \* \*

34–1004

A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors *unless the release so provides*; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release.... (emphasis supplied)

The district court granted appellee's motion finding that the release was unambiguous and that the language of the release discharging "all other persons, firms, corporations ..." satisfied the language of § 34–1006 of the Uniform Act providing that other tortfeasors are discharged "if the

cancer and also for his prescribing the drug "Feminone." Dr. Lane then filed a third-party complaint against Upjohn Co., manufacturer of Feminone. Clayborn then amended her complaint to assert a claim against Upjohn and also joined appellee.

On February 22, 1975, Clayborn and Lane's complaints against Upjohn were dismissed upon motion and stipulation of the parties.

release so provides." *Douglas v. United States Tobacco Co.*, No. FS–76–72–C (W.D. Ark. May 21, 1981). In support of its holding the district court reasoned that under § 34–1002(2) of the Uniform Act appellee could not have proceeded against the estate of Dr. Manley until it had discharged the common liability or paid more than its pro rata share. Therefore, the release would not limit Dr. Manley's exposure unless it also limited the total exposure of all joint tortfeasors. The court further reasoned that under § 34–1002(3) of the Uniform Act a joint tortfeasor is not entitled to recover from a second joint tortfeasor whose liability has not been extinguished by settlement. Therefore, Dr. Manley or his estate could not have contribution from appellee unless appellee was also a beneficiary of the release and the entire claim of Clayborn was settled.

In further support of its holding the district court cited *Morison v. General Motors Corp.*, 428 F.2d 952 (5th Cir.), *cert. denied*, 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 141 (1970), in which the Fifth Circuit held that a general release discharging "all other persons" was sufficient under § 34–1004 of Arkansas' Uniform Act to release joint tortfeasors who were not parties to the release.

On appeal appellant first argues that the district court erred, as a matter of law, because the Arkansas Supreme Court has held that a joint tortfeasor is discharged only if specifically named in a release, citing *Smith v. Tipps Engineering & Supply Co.*, 231 Ark. 952, 333 S.W.2d 483 (Ark.1960) (*Smith*), and *Allbright Brothers Contractors v. Hull-Dobbs Co.*, 209 F.2d 103 (6th Cir. 1953) (*Allbright*), which was relied upon in *Smith*. We disagree with appellant's interpretation of those cases and conclude that they are distinguishable from the present case.

On April 8, 1976, the action against Dr. Lane was dismissed, pursuant to a settlement Clayborn made with Dr. Lane for $2,500. The form of the release executed between Clayborn and Lane did not discharge anyone else.

Appellee, the sole remaining defendant, then removed the case to the federal district court.

In *Smith* the sole issue before the court was whether a judgment in a friendly suit barred a subsequent action against a joint tortfeasor. The case is based upon § 34–1003 of the Uniform Act, which provides for the effect of a judgment against one tortfeasor and is not at issue here. In addition, the release in that case provided: "[W]e hereby covenant that no release has been or will be given to or settlement or compromise made with any third party who may be liable for any damages to us. . . ." 333 S.W.2d at 484. Therefore, in contrast to the release before us, the release in *Smith* explicitly provided that no other persons were to be or had been discharged.

*Allbright* is similarly distinguishable on the basis that the release in that case did not release anyone but the named tortfeasor. 209 F.2d at 103. In addition, the issue for decision in *Allbright*, like *Smith*, was not the language of a release. The case involved judgments entered upon a settlement agreement in which only the paying joint tortfeasor was named. The judgments that were paid did not purport to discharge the common liability of the other joint tortfeasors nor did they purport to discharge the other joint tortfeasors from liability to the injured parties.[3]

We conclude that neither *Smith* nor *Allbright* support appellant's argument. In addition, our research indicates that there are no Arkansas or Eighth Circuit cases construing the words "unless the release so provides" which deal with a release of "all other persons, firms, or corporations, etc."

■ The majority of cases from other jurisdictions have held that language re-leasing any and all persons in addition to the named parties satisfies the requirement of the Uniform Act "unless the release so provides." *Morison v. General Motors Corp., supra*, 428 F.2d 952; *Doganieri v. United States*, 520 F.Supp. 1093 (N.D.W.Va. 1981); *Stefan v. Chrysler Corp.*, 472 F.Supp. 262 (D.Md.1979), aff'd, 622 F.2d 587 (4th Cir. 1980); *Fuls v. Shastina Properties, Inc.*, 448 F.Supp. 983 (N.D.Cal.1978); *Bonar v. Hopkins*, 311 F.Supp. 130 (W.D.Pa.1969), aff'd, 423 F.2d 1361 (3d Cir. 1970); *Dorenzo v. General Motors Corp.*, 334 F.Supp. 1155 (E.D.Pa.1971); *Peters v. Butler*, 253 Md. 7, 251 A.2d 600 (1969); *Johnson v. City of La Cruces*, 86 N.M. 196, 521 P.2d 1037 (1974); *Hasselrode v. Gnagney*, 404 Pa. 549, 172 A.2d 764 (1961). We agree with this construction as announced in these cases.[4]

The Fifth Circuit in *Morison v. General Motors Corp., supra*, 428 F.2d 952, explains the policy reasons for allowing an unnamed defendant to have the benefit of a general release, especially in light of the Uniform Act. The defendant who originally procures the release gains nothing if the plaintiff can sue other joint or concurrent tortfeasors. In such a case, the original defendant is left open to claims for contribution and/or indemnity and may wind up having to litigate the case anyway.

We believe that *Morison* is a carefully considered opinion based upon sound reasoning. Also, we note that it was decided in 1970, and the legislature of the State of Arkansas has had ample opportunity to act if it thought that the *Morison* decision was inconsistent with Arkansas law. The legislature has not acted. Nor has any litigant

3. *See also* Lindsey, *Documentation of Settlements*, 27 Ark.L.Rev. 27, 33 n.30 (1973), indicating that *Smith* and *Allbright* can also be distinguished from *Morison* on the basis that *Smith* and *Allbright* both involved minors and that the court in *Smith* opted for the view that all possible precautions must be taken to free the settlement from attack where such is the situation.

4. Appellant cites several cases from Florida which have reached the opposite result. However, Florida law differs from Arkansas law in an important respect. Under Arkansas law a release by the injured person of one joint tort-feasor does not relieve the released joint tortfeasor from liability to make contribution to another joint tortfeasor unless any liability to the plaintiff of the other joint tortfeasor has been discharged or unless the release provides for a pro rata release of all other tortfeasors. In contrast, under Florida law a release of one tortfeasor does relieve him from liability to make contribution to any other joint tortfeasor. *See* Fla.Stat. § 768.31(5).

The other cases cited by appellant are not from jurisdictions which have adopted the Uniform Contribution Among Tortfeasors Act.

sought to have an Arkansas appellate court overturn the *Morison* ruling. In addition, we note that *Morison* is consistent with the majority position. Therefore, in the absence of any indication that Arkansas would not follow the majority position, we affirm the district court.

Appellant next argues that the insertion of the date "1971" in the release, which was executed in 1973, demonstrates the parties' intent to release only Dr. Manley's estate or, alternatively, creates an ambiguity so that parol evidence should have been admitted.[5] Appellant also argues that the Arkansas Supreme Court would, if presented with the issue, hold that a party to a release could introduce parol evidence in a suit against a stranger. In response appellee argues that, under Arkansas law, when a contract is unambiguous, evidence of intent of the parties is inadmissible to vary the agreement. Appellee further argues that the Arkansas rule allowing a stranger to the contract to introduce parol evidence is inapplicable here because appellant's predecessor in interest was a party to the release. We agree with appellee.

■■■ The law in Arkansas is that "whenever parties to a contract express their intention in clear and unambiguous language in a written instrument, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed...." *Green v. Ferguson*, 263 Ark. 601, 567 S.W.2d 89, 91 (1978), *citing C & A Construction Co. v. Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974), *and Miller v. Dyer*, 243 Ark. 981, 423 S.W.2d 275 (1968). When the contract

is unambiguous, evidence of intent of the parties is inadmissible to vary the agreement. *C & A Construction Co. v. Benning Construction Co., supra*, 509 S.W.2d at 304. Also, the language of a contract should be construed as a whole to make apparently conflicting provisions reasonable and consistent if it is possible to do so. *Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532, 538 (Ark.1974).

■■■ Here, the release explicitly discharges not only the estate of Dr. Manley, but extends to "all other persons, firms, corporations, associations or partnerships" and discharges them from "any and all claims, actions, causes of action ... which the undersigned now has/have or which may hereafter accrue...." It must be assumed that the parties intended what is expressed in their writing. The language could be no more forceful.

Appellant asserts that the insertion of the date "1971" is inconsistent with the release of all persons, thus rendering the release ambiguous. However, this argument ignores the fact that in an earlier adjudication it was determined that there was a "single wrong—one injury—the cancerous condition which arose from an 'interlocked series of transactions,' ..."[6] Because there was only a "single wrong" and "only one injury," the release of Dr. Manley's estate and "all other persons" from "any and all claims" could only relate to the consequences of the sole injury. Therefore, construing the language of the release as a whole, we conclude that the insertion of the date "1971" does not render the release ambiguous.

---

5. Appellant also argues that there was a mistake of material fact by the parties to the release as to the effect of a release. However, the only mistake alleged is that appellant's decedent did not intend to release appellee. This is not a mistake of fact but rather a misconception of the legal effect of the language in the release. Under Arkansas law "[m]ere mistake of a party as to the legal effect of an instrument does not vitiate the instrument or afford grounds for reformation." *Clampitt v. Ponder*, 91 F.Supp. 535, 543 (W.D.Ark.1950) (citation omitted).

6. *See* note 4 *supra*. Appellee attempted to remove the action to federal district court on December 26, 1973, asserting diversity jurisdiction and contending that the cause of action against it was a separate, independent claim. Clayborn filed a motion to remand the action to state court contending that the action was not separable as to appellee and that the defendants were joint tortfeasors. The district court remanded the case to state court based on the finding that Clayborn had "alleged a single wrong ...." *Clayborn v. United States Tobacco Co.*, Civil No. FS–73–C–103 (W.D.Ark. filed Mar. 20, 1974) (Hon. Paul X Williams).

Finally, appellant cannot benefit from the Arkansas law that a stranger to a contract can introduce parol evidence to vary a written contract. Appellant is not the stranger to this release because his predecessor in interest was a party to the release. Further, appellant has not cited us to any cases indicating that Arkansas might be leaning towards an extension of this exception to the parol evidence rule.

The judgment of the district court is affirmed.