W. Lee MOORE and Shirley Barnett, as Surviving Heirs of Winnie Ruth Thomas *v.* MISSOURI PACIFIC RAILROAD and John C. Peterson, Jr.

88-320                                                    773 S.W.2d 78

Supreme Court of Arkansas
Opinion delivered June 26, 1989

*Gresham A. Phillips,* for appellant.

*Herschel H. Friday, Frederick S. Ursery,* and *James C. Baber, Jr.,* by: *Frederick S. Ursery,* for appellee.

JACK HOLT, JR., Chief Justice. This appeal involves an issue of first impression in Arkansas: Whether a general release discharging "any and all persons, associations and corporations,

whether herein named or referred to or not" is effective to release potential joint tortfeasors not named or specifically identified in the release. The trial court granted summary judgment on the basis that a general release is effective to release such parties. It erred in doing so. Accordingly, we reverse and remand.

On September 13, 1984, an automobile-train collision occurred in Benton, Arkansas. The driver of the car, Mary A. Richardson, was killed instantly. A passenger in the car, Winnie Ruth Thomas, was severely injured. On or about September 25, 1984, an insurance adjustor for Richardson's liability carrier, Sentry Insurance, approached appellant W. Lee Moore, Thomas' son, at the hospital where Winnie Thomas was a patient and told him that Mary Richardson had $25,000.00 in insurance and that "it was the most they could get so they might as well go ahead and settle." On October 2, 1984, Thomas executed a power of attorney to Lee Moore, and on October 24, 1984, Moore, on behalf of Thomas and without benefit of counsel, released Mary Richardson for the sum of $25,000.00. The released contained the following language:

> That Winnie Ruth Thomas of 513 River St., Benton, Ark., for and in consideration of the sum of Twenty Five Thousand Dollars, ($25,000.00), the receipt and sufficiency of which is hereby acknowledged, does hereby remise, release and forever discharge Mary A. Richardson (handwritten), 1200 W. Pine #33, Benton, Ark., *his successors and assigns, and/or his, her, their heirs, executors and administrators, and also any and all other persons, associations and corporations, whether herein named or referred to or not, and who, together with the above named, may be jointly or severally liable to the Undersigned, of and from any and all, and all manner of, actions and causes of action, rights, suits, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity,* including claims and contribution, arising from and by reason of any and all Known and Unknown, Foreseen and Unforeseen bodily and personal injuries or death, damage to property, and the consequences thereof, which heretofore have been, and which hereafter may be sustained by the Undersigned or by any and all other persons, associations and corporations,

whether herein named or referred to or not, and especially from all liability arising out of an occurrence that happened on or about this the 13 day of September, 1984, at or near State Highway 183 and State Highway #35 in Benton, Ark. [Emphasis added.]

Winnie Thomas died on or about May 15, 1985. Thereafter, appellants Lee Moore and Shirley Barnett, as surviving heirs of Winnie Thomas, filed suit against appellees Missouri Pacific Railroad and John C. Peterson, Jr., the engineer of the train, claiming that Thomas' injuries and death were caused by (1) the negligence of Missouri Pacific in failing to maintain the railroad crossing and (2) the negligence of Peterson, as agent of Missouri Pacific, in failing to keep a proper lookout, in failing to give a proper warning, in operating a locomotive at an excessive rate of speed, and in failing to keep his train under proper control.

On November 24, 1986, Missouri Pacific and Peterson filed a motion for summary judgment on the ground that the release executed by Thomas and Moore on behalf of Mary Richardson inured to the benefit of Missouri Pacific and Peterson. In response, Moore and Barnett filed an affidavit signed by Moore stating that it was not his intention to release any party from liability other than Mary Richardson. In addition, they filed an affidavit signed by Jerri Delamar, a reading teacher, stating that it was her opinion that Lee Moore is "capable of reading on no higher than a fourth grade level." The trial court granted the motion. From this order, Moore and Barnett appeal.

For reversal, they contend that the trial court erred in granting summary judgment on the basis that the general release executed by Moore on behalf of Mary Richardson and "any and all persons, associations and corporations, whether herein named or referred to or not" was effective to discharge Missouri Pacific and Peterson. For the reasons stated below, we agree.

The determinative issue before us is as follows: Whether a release discharging "any and all persons, associations and corporations, whether herein named or referred to or not" is effective to release potential joint tortfeasors not named or specifically identified in the release.

At common law a release of one tortfeasor automatically

released all other tortfeasors jointly liable for the wrong. *Magnolia Petroleum Co.* v. *McFall*, 178 Ark. 596, 12 S.W.2d 15 (1928). *See also Jones* v. *Chism*, 73 Ark. 14, 83 S.W. 315 (1904). The rationale for this doctrine was that where there has been a release of one tortfeasor, the cause of action is satisfied and no longer exists. *Magnolia, supra.*

In 1941 Arkansas changed this common law rule with the adoption of section four of the Uniform Contribution Among Joint Tortfeasors Act, currently codified as Ark. Code Ann. § 16-61-204 (1987). This provision provides as follows:

> A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors *unless the release so provides;* but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid. [Emphasis added.]

Section four of the Uniform Act is now law in twenty states besides Arkansas.[1] *See* Uniform Contribution Among Joint Tortfeasors Act, 12 U.L.A. 71 (Supp. 1989); Note, *Contracts, Parol Evidence in Release Forms: The Problem of "Boilerplate" Language*, 6 Miss. C.L. Rev. 189 (1986). At least twelve jurisdictions have enacted statutes with language substantially similar to that in Ark. Code Ann. § 16-61-204.[2] Two states have

---

[1] Alaska Stat. § 09.16.040 (1983); Ariz. Rev. Stat. Ann. § 12-2504 (Supp. 1988); Colo. Rev. Stat. § 13-50.5-105 (Repl.1987); Del. Code Ann. tit. 10, § 6304 (1974); Fla. Stat. Ann. § 768.31(5) (West 1986); Hawaii Rev. Stat. § 663-14 (Repl. 1985); Idaho Code § 6-805 (1979); Ill. Ann. Stat. ch. 70, § 302 (Smith-Hurd 1989); Md. Ann. Code art. 50, § 19 (Repl. 1986); Mass. Ann. Laws ch. 231B, § 4 (Law. Co-op. 1986); Nev. Rev. Stat. § 17.245 (1986); N.M. Stat. Ann. § 41-3-4 (Repl. 1986); N.C. Gen. Stat. § 1B-4 (1983); N.D. Cent. Code § 32-38-04 (Repl. 1976); Ohio Rev. Code Ann. § 2307.32(F) (Anderson 1981); 42 Pa. Cons. Stat. Ann. § 8326 (Purdon 1982); R.I. Gen. Laws § 10-6-7 (1985); S.C. Code Ann. § 15-38-50 (Law. Co-op. Supp. 1988); S.D. Codified Laws Ann. § 15-8-17 (1984); Tenn. Code Ann. § 29-11-105 (Repl. 1980).

[2] Cal. Civ. Proc. Code § 877(a) (Deering Supp. 1989); Conn. Gen. Stat. § 52-572e(b) (1985); Me. Rev. Stat. Ann. tit. 14, § 163 (1964); Mich. Comp. Laws Ann. § 27A.2925(4) (1988); Mo. Rev. Stat. § 537.060 (1988); N.H. Rev. Stat. Ann. § 507:7-b (1983); N.Y. Gen. Oblig. Law § 15-108 (McKinney 1989); Okla. Stat. Ann. tit. 12, § 832 (West 1988); Utah Code Ann. § 15-4-4 (Repl. 1986); Va. Code Ann. § 8.01-35.1 (Supp.

enacted statutes based on the Uniform Act, but these statutes do not have equivalents of the Act's section four pertaining to releases.[3]

Courts interpreting statutes virtually identical to Ark. Code Ann. § 16-61-204 have taken three separate approaches in determining whether a release which in essence discharges the world at large is effective to release joint tortfeasors not named or specifically identified in the release.

A number of these courts have taken the position that a general release discharging all other parties who might be liable for damages in addition to a named tortfeasor is sufficient to release a joint tortfeasor not named or specifically identified in the release. *Morison* v. *General Motors Corp.*, 428 F.2d 952 (5th Cir. 1970) (applying Ark. Stat. Ann. § 34-1004 (Repl. 1962), currently Ark. Code Ann. § 16-61-204 (1987)); *Douglas* v. *United States Tobacco Co.*, 670 F.2d 791 (8th Cir. 1982) (applying Ark. Stat. Ann. § 34-1004 (Repl. 1962)); *Auer* v. *Kawasaki Motors Corp., USA*, 830 F.2d 535 (4th Cir. 1987) (applying Md. Ann. Code art. 50, § 19 (Repl. 1986)); *Doganieri* v. *United States*, 520 F. Supp. 1093 (N.D. W. Va. 1981) (applying W. Va. Code Ann. § 55-7-12 (Repl. 1981)); *Hasselrode* v. *Gnagey*, 404 Pa. 549, 172 A.2d 764 (1961); *Johnson* v. *City of Las Cruces*, 86 N.M. 196, 521 P.2d 1037 (Ct. App. 1974). *See also Mussett* v. *Baker Material Handling Corp.*, 844 F.2d 760 (10th Cir. 1988) (applying Okla. Stat. Ann. tit. 12, § 832 (1988)); *State Farm Mut. Auto Ins. Co.* v. *Reynolds*, 676 F. Supp. 106 (W.D. Va. 1987) (applying Va. Code Ann. § 8.01-35.1(A)(1) (Supp. 1987)); *Liberty* v. *J.A. Tobin Construction Co., Inc.*, 512 S.W.2d 886 (Mo. App. 1974). This position has been called the "flat bar" rule. *See McInnis* v. *Harley-Davidson Motor Co., Inc.*, 625 F. Supp. 943 (D.R.I. 1986).

Other courts have adopted the "intent" rule. Pursuant to this rule, a boilerplate discharge of the world at large does not have the effect of automatically releasing unnamed tortfeasors; instead, the release will serve that purpose if and to the extent that

---

1988); Wash. Rev. Code Ann. § 4.22.060(2) (1987); W. Va. Code § 55-7-12 (Repl. 1981); Wis. Stat. Ann. § 113.04 (West 1988).

[3] Miss. Code Ann. § 85-5-5 (1972); N.J. Stat. Ann. § 2A:53A-1—3 (1987).

the parties so intended. *McInnis, supra* (applying R.I. Gen. Laws § 10-6-7 (1985)); *Hurt* v. *Leatherby Ins. Co.,* 380 So. 2d 432 (Fla. 1980); *Flanagan* v. *State of Florida Dept. of Transportation,* 532 So. 2d 714 (Fla. Dist. Ct. App. 1988). *See also Manos* v. *Trans World Airlines, Inc.,* 295 F. Supp. 1166 (N.D. Ill. 1968) (applying Cal. Civ. Proc. Code § 877(a) (West 1957) and Arizona law)); *Sellon* v. *General Motors Corp.,* 521 F. Supp. 978 (D. Del. 1981) (applying Del. Code Ann. tit. 10, § 6304 (1974)); *Hower* v. *Whitmak Associates,* 371 Pa. Super. Ct. 443, 538 A.2d 524 (1988); *Blanchfield* v. *Com. Dept. of Trans.,* 100 Pa. Commw. 62, 513 A.2d 1156 (1986); *Evans* v. *Tillet Bros. Const. Co., Inc.,* 545 S.W.2d 8 (Tenn. 1976). To glean the intent of the parties, these courts look beyond the four corners of the releasing instrument.

The remaining courts have taken the "specific identity" path. These courts conclude that the release of one tortfeasor does not discharge other tortfeasors unless the latter are named in the release or are otherwise specifically identifiable from the face of the instrument. *Beck* v. *Cianchetti,* 1 Ohio St. 3d 231, 439 N.E.2d 417 (1982); *Alsup* v. *Firestone Tire & Rubber Co.,* 101 Ill. 2d 196, 461 N.E.2d 361 (1984); *Young* v. *State,* 455 P.2d 889 (Alaska 1969); *Alaska Airline Inc.* v. *Sweat,* 568 P.2d 916 (Alaska 1977); *Bjork* v. *Chrysler Corp.,* 702 P.2d 146 (Wyo. 1985); *Aid Ins. Co.* v. *Davis County,* 426 N.W.2d 631 (Iowa 1988); *Spector* v. *K-Mart Corp.,* 99 A.D.2d 605, 471 N.Y.S.2d 711 (1984); *Sage* v. *Hale,* 75 Misc. 256, 347 N.Y.S.2d 416 (Sup. Ct. 1973). All courts taking the "specific identity" position agree that naming a releasee meets the requirement. Short of naming the party to be released, the releasee must be referred to in such a manner that his identification is made manifest. *See Pakulski* v. *Garber,* 6 Ohio St. 3d 252, 452 N.E.2d 1300 (1983).

In examining the various cases supporting the three approaches, we find *Beck, supra,* and *Alsup, supra,* to be persuasive authority. In *Beck,* the plaintiff, a passenger on a motorcycle, was injured when the motorcycle was hit by an automobile. After the accident, she executed a release discharging a named tortfeasor and "all other persons, firms, associations, or partnerships" from any and all claims resulting from the accident. Thereafter, she brought suit against a party jointly liable for the occurrence but who was not a party to the release. In holding that the second

tortfeasor was not released, the Supreme Court of Ohio stated as follows:

> Apparently the General Assembly intended to change the common law; otherwise, there would have been no reason to enact the statute. The legislative mandate in R.C. 2307.32 abrogates the common law rule which provided that a release given to one tortfeasor was a release of all others and often entrapped the average person into reasonably assuming that settling a claim with one person would have no effect upon rights against others with whom he did not deal. (Citation omitted.) Instead, R.C. 2307.32 provides that a release to one tortfeasor does not discharge any other tortfeasor "unless its terms otherwise provide." The thrust of this section is to retain the liability of tortfeasors and, thus, the phrase "unless the terms otherwise provide" should be narrowly construed and require a degree of specificity. Allowing a discharge which does not name or identify a tortfeasor perpetrates the common law rule and is contrary to statute.
>
> The statutory phrase "unless its terms provide otherwise" requires a release to expressly designate by name or to otherwise specifically describe or identify any tortfeasor to be discharged. For example, a release could meet the statutory requirement by naming an individual or specifically identifying a tortfeasor such as stating the driver of the car which struck the motorcycle.

In *Alsup*, the plaintiffs were injured when their car was struck by another vehicle. They filed suit against the driver of the second vehicle. The plaintiffs settled with the driver and executed a release discharging him and "all persons, firms, and corporations, both known and unknown, of and from any and all claims." Thereafter, they filed a products liability suit against the manufacturer of the tires on the second vehicle.

The question on appeal was whether the release given by the plaintiffs satisfied the "unless its terms so provide" language of section 2(c) of the Illinois Contribution Among Joint Tortfeasors Act, Ill. Rev. Stat. ch. 70, § 302(c) (Smith-Hurd 1979). The Supreme Court of Illinois stated as follows:

There are convincing reasons, however, against holding that a broadly worded general release, as we have here, will satisfy the conditional language in section 2(c). A purpose of the uniform act was to abrogate the common law rule that the release of one joint tortfeasor releases all joint tortfeasors. (Citation omitted.) The common law rule deservedly has been strongly criticized. It has been described as "harsh," "without any rational basis," and "very unfair." (Citation omitted.) If literal effect were given to every use of a general release form and "all other persons, firms, and corporations," as it appears here, were to be discharged, an important purpose of the Act would be thwarted by the unintended release of persons who were strangers to the release contract. The common law rule released joint tortfeasors by operation of law. By the general release there would be, on the ground of contract, an unwitting discharge of joint tortfeasors.

The legislature intended to abolish the common law rule that produced an involuntary discharge of joint tortfeasors. Section 2(c) states that a release will not operate to "discharge any of the other tortfeasors from liability for the injury * * *." We do not consider that the modifying language that follows, i.e., "unless its terms so provide," should be interpreted to allow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms. The legislature surely was aware of the criticism that the common law rule often operated to violate the intentions of the persons giving releases. We consider that the legislature's intendment was that under section 2(c) a release was not to discharge "other tortfeasors" from liability unless they were designated by name or otherwise specifically identified.

Clearly, it was the intention of the Arkansas Legislature in enacting Ark. Code Ann. § 16-61-204 to abrogate the common law rule that a release of one tortfeasor released all other tortfeasors jointly liable for the occurrence, thereby retaining the liability of joint tortfeasors. Accordingly, we must construe the language of § 16-61-204, "unless the release so provides," in a manner that best conforms with the objective of the legislature in

enacting the code provision. *See Hice* v. *State*, 268 Ark. 57, 593 S.W.2d 169 (1980); *Howze* v. *Hutchens*, 213 Ark. 52, 209 S.W.2d 286 (1948); *Holt* v. *Howard*, 206 Ark. 337, 175 S.W.2d 384 (1943). In doing so, we conclude that in order to satisfy the language of § 16-61-204, a release must name or otherwise specifically identify the tortfeasors to be discharged. Broad boilerplate language is not sufficient.

As recognized by the Supreme Court of Alaska in *Young, supra,* requiring specific identification of joint tortfeasors as a condition precedent to their discharge will insure that the intention of the parties to a release is given effect and will significantly minimize the possibility that unwary parties will be misled as to the effect of a release. Moreover, this rule lends itself to fair play and easy application.

In the case at bar, the release did not name or otherwise specifically identify Missouri Pacific and John C. Peterson, Jr. Thus, it did not have the effect of releasing them. Since the trial court granted summary judgment on the basis that the release effectively discharged these parties, we reverse and remand.

Reversed and remanded.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. At common law, the discharge of one tortfeasor automatically discharged any other joint tortfeasor completely, regardless of the terms of the release. *Magnolia Petroleum Co.* v. *McFall*, 178 Ark. 596, 12 S.W.2d 15 (1928). By enacting the Uniform Contribution Among Tortfeasors Act, now codified as Ark. Code Ann. § 16-61-204 (1987), the General Assembly departed from common law tradition. Section 16-61-204 provides in pertinent part:

> A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors *unless the release so provides. . .* [Our emphasis.]

Here, the release form discharged the driver of the car, Mary A. Richardson, by name, and included the following language releasing:

> . . . *any and all other persons, associations and corpora-*

*tions*, whether herein named or referred to or not, and who, together with the above named, may be jointly and severally, liable to the Undersigned, of and from any and all, and all manner of, actions and causes of action, rights, suits, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity. . . [Our emphasis.]

The majority holds that a release of "all persons, associations and corporations" is ineffective to release unnamed third persons not parties to the release, thereby ignoring the plain meaning of the release language. Yet, Arkansas law requires that when parties to a contract express their intention in clear and unambiguous language in a written instrument, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Green* v. *Ferguson*, 263 Ark. 601, 567 S.W.2d 89 (1978).

In addition, the majority ignores the rule of statutory construction that statutes in derogation of the common law will be strictly construed. *Wright* v. *Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970); *Raney* v. *Gunn*, 221 Ark. 10, 253 S.W.2d 559 (1952). This statute departs from the common law in that a release of joint tortfeasors is no longer *automatic* upon the release of one of the tortfeasors. In order to release other joint tortfeasors the release must so provide. Strictly interpreting the words of the statute suggests that the general release satisfies the "unless the release so provides" requirement.

Federal courts interpreting Ark. Code Ann. § 16-61-204 (1987) [previously Ark. Stat. Ann. § 34-1004] have held that general releases satisfy the statutory requirement. *Morison* v. *General Motors Corporation*, 428 F.2d 952 (5th Cir. 1970). Twelve years after *Morison*, in *Douglas* v. *United States Tobacco Co.*, 670 F.2d 791 (8th Cir. 1982), the Eighth Circuit held that a general release discharging "all other persons" was sufficient under the Arkansas Uniform Contribution Among Tortfeasors Act to release joint tortfeasors who were not parties to the release. The Eighth Circuit stated that:

We believe that *Morison* is a carefully considered opinion based upon sound reasoning. Also, we note that it was decided in 1970, and the legislature of the State of

Arkansas has had ample opportunity to act if it thought that the *Morison* decision was inconsistent with Arkansas law.

The majority opinion determines that it was the intent of the legislature in passing the Uniform Contribution Among Tortfeasors Act to abolish the common law rule that produced an involuntary discharge of joint tortfeasors upon the release of one tortfeasor. I agree. However, the majority extends this rationale further and determines that the language "unless the release so provides" does not adequately protect against involuntary discharge and adopts a specific identity rule. The majority requires that to satisfy the language of Ark. Code Ann. § 16-61-204, a release must name or otherwise specifically identify the tortfeasors to be discharged. Arguably, there are sound policy reasons for requiring that specific names be enumerated in the release, nevertheless, such arguments are best made to the legislature and not to this court. The intent of our legislature was to change the harsh common law rule of involuntary release. This was accomplished with the "unless the release so provides" language, and the legislature's inaction since *Morison* confirms that this was their only intent. It is not for this court to construe the language of Ark. Code Ann. § 16-61-204 to *best* conform to the legislature's intent, but merely to *effectuate the plain intent* expressed in the enactment. Therefore, I must respectfully dissent.

HICKMAN J., and GLAZE, J., join.