**CRESTAR MORTGAGE CORPORATION**

v.

**Gerald SHAPIRO, Esquire, David Kreisman, Esquire, and Shapiro & Kreisman, a Partnership.**

Civil Action No. 95–680.

United States District Court, E.D. Pennsylvania.

Sept. 12, 1996.

Stephen Levin, Neil E. Jokelson & Associates, PC, Philadelphia, PA, for Plaintiff.

Denis James Lawler, Blank, Rome, Comisky and McCauley, Philadelphia, PA, for Gerald Shapiro, David Kreisman, Shapiro & Kreisman.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This diversity case is a legal malpractice action arising out of defendant attorneys' alleged mishandling of a foreclosure action on behalf of plaintiff against property owned by Richard Gottfried. Plaintiff Crestar Mortgage Corporation ("Crestar," a Virginia corporation) asserts that defendants Gerald Shapiro, Esq., David Kreisman, Esq., and Shapiro & Kreisman (collectively, "S & K," Pennsylvania lawyers in a Pennsylvania law firm) delayed filing the action for a period of several months and, after filing, delayed in filing or omitted to respond to various motions. These delays and omissions, Crestar asserts, resulted in additional delay as Gottfried obtained a stay of the foreclosure action. The stay was not lifted until Crestar fired S & K and hired new counsel, seven months later.

After proceeding in the foreclosure action with new counsel, Crestar brought suit against the partnership of Shapiro & Kreisman, Gerald Shapiro and David Kreisman individually, and two other attorneys at S & K later dismissed from this action. The complaint asserts causes of action for breach of contract, negligence, breach of fiduciary duty, and intentional misrepresentation. Crestar seeks damages based on the diminution in value of the property during the pendency of the foreclosure action; impairment of the opportunity to seek monies in satisfaction of Gottfried's mortgage from Gottfried or a third party (Peoples Mortgage Company); loss of use of funds invested in Gottfried's property; and incidental and consequential damages. The suit was originally filed in the Court of Common Pleas of Philadelphia County, from which it was removed to this court. I ordered dismissal of the intentional misrepresentation claim on September 7, 1995.

Defendants S & K have now moved for summary judgment on the basis of release.[1] Their Fourth Affirmative Defense asserts that a release signed by Crestar in earlier litigation involving the same property—which is located at 4 Stoneham Lane, in Paoli, Pennsylvania—bars Crestar's claims against them. The earlier litigation was a suit by Crestar against Peoples Mortgage Co., Inc. ("Peoples"), Jay M. Berger, Unity Abstract Co., Inc. ("Unity"), Audrey Scheier, Roy Chowdhury, Gottfried, National Financial Corporation ("National"), and Stewart Title Guaranty Company and Stewart of Pennsylvania, Inc. (collectively "Stewart"), and was instituted in this court as No. 91–7990. In that action, Crestar claimed damages based on its purchase of a Note and Mortgage executed by Gottfried in favor of Peoples. Crestar later settled this action and executed a General Mutual Release with Peoples, Berger, Unity, Scheier, and Chowdhury, as well as a separate Settlement Agreement and Release with Stewart. It is the General Mutual Release that is at issue in this motion.

### The Peoples Action

Some details of the earlier action—No. 91–7990, which I shall refer to as the "Peoples action"—are necessary to understanding the scope of the release. Crestar's amended complaint alleged the following facts: Peoples, Unity, Berger (President), Scheier (an employee of both Peoples and Unity and an agent of Stewart), Chowdhury (apparently also an employee of Peoples), and Stewart participated in a conspiracy with Gottfried and National Financial Corporation, a company Gottfried owned and controlled. Gottfried forged his sister Karen Gottfried's signature in order to purchase the Paoli property, and later forged it again to transfer the property from his sister to himself. In each transaction, Scheier allegedly notarized Gottfried's signature and participated in drawing up a settlement sheet

---

1. "Defendants' Fourth Affirmative Defense—Release" was submitted to this court on January 12, 1996, accompanied by a stipulation of the parties to amend Defendants' Affirmative Defenses, which I approve in the order accompanying this memorandum.

reflecting a false and inflated purchase price and a false down payment. In acquiring the property in his own name, Gottfried took out a loan from Peoples, which loan was immediately purchased by Crestar pursuant to a Bi-Weekly Purchase Agreement between the two mortgage companies. Peoples, Unity, and Stewart allegedly submitted credit and title documents, including verifications and an appraisal, to Crestar; these were false in various material respects. Crestar relied on these documents in purchasing the Gottfried note and mortgage. Gottfried defaulted after the first payment was due, after which Crestar obtained a new appraisal, which showed the property to be worth substantially less than had been asserted by Peoples.

Counts I and II of Crestar's amended complaint in 91–7990 asserted breach of contract claims against Peoples. Counts III and IV asserted claims against Berger and Chowdhury individually for participation in making the false statements upon which Crestar relied. Counts V and VI alleged negligence in underwriting and misrepresentation on the part of National and Peoples. Count VII asserted misrepresentation by Gottfried. Counts VIII and IX alleged failure by Stewart and Unity to inform Crestar of certain forgeries and misrepresentation in the settlement statements. Count X and XI asserted that Stewart and Unity had been negligent in providing title insurance and in conducting the closing. Count XII, against Scheier, alleged false notarization and participation in fraud. Counts XIII and XIV asserted claims on the basis of respondeat superior and breach of fiduciary duty against Stewart, Unity, and Peoples. Counts XV, XVI, and XVII alleged bad faith and breach of the title insurance policy on the part of Stewart Title. Finally, Count XVIII alleged conspiracy on the part of all defendants.

On May 25, 1995, Crestar signed a document titled "General Mutual Release (PA)," which was later signed by Peoples, Berger, Unity, Scheier, Chowdhury, and Reliance Insurance Company of Illinois (Reliance). The document states that the release is given in consideration of Reliance's payment to Crestar of the remaining available proceeds under Peoples's and Berger's insurance policy, represented to be at least $150,000; it also acknowledges payment by Stewart to Crestar of $125,000. Crestar entered into a separate Settlement Agreement and Release with Stewart, releasing Stewart from all past or future causes of action relating to Stewart's title insurance policy on the Paoli property.

The General Mutual Release provides in relevant part as follows:

[T]he parties hereto, their parents, subsidiaries, affiliates, officers, directors, shareholders, agents, servants, employees, successors, and assigns ("Releasors") do hereby remise, release, and forever discharge each other, as well as each of their respective parents, subsidiaries, affiliates, officers, directors, shareholders, agents, servants, employees, successors, and assigns, and all other persons (collectively referred to hereafter as "Releasees") of and from all manner of actions, causes of action, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands arising directly or indirectly out of the claims made in [Civil Action No. 91–7990] or which could have been asserted in the Civil Action, whether in law or in equity. ~~which against the said Releasees the Releasors ever had, now have, or which the Releasors or any of them hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever.~~

PROVIDED: Nothing in this General Mutual Release is a release of Richard Gottfried and National Financial Corporation.

PROVIDED: Nothing in this General Mutual Release is a release by Mark C. Clemm, Esquire, and Cutler, Clemm & Morris, P.C. of Peoples, Berger, and Unity, and nothing in this General Mutual Release is a release by Peoples, Berger, and Unity of Mark C. Clemm, Esquire, and Cutler, Clemm & Morris, P.C.

Exhibit A to Stipulation, at 2–3 [strikeout signed by Sterling Edwards, Jr., Executive Vice President of Crestar]. The question on this motion for summary judgment is whether the quoted language releases S & K from liability to Crestar for its alleged mishan-

dling of the foreclosure of Gottfried's mortgage on the Paoli property.

*Pennsylvania Law Governing Releases*

■ The Pennsylvania Supreme Court has consistently upheld the application of releases to claims against persons or entities not party to the release.[2] Pennsylvania law holds that a release's effect must be determined from the ordinary meaning of its language. *See, e.g., Wolbach v. Fay,* 488 Pa. 239, 412 A.2d 487, 488 (1980). A release may be applicable to parties not specifically named in the release if its terms clearly extend to them. *See, e.g., Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764, 765 (1961). Parties "may agree for reasons of their own that they will not sue each other or any one for the event in question. However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case." *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733, 735 (1989). The reason given for this doctrine is that:

> If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen.... It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.

*Id.* (quoting *Emery v. Mackiewicz,* 429 Pa. 322, 240 A.2d 68, 70 (1968)).

Numerous arguments have been raised that this line of cases both unjustly enriches third parties released unintentionally and needlessly penalizes releasors for their (or their attorneys') carelessness. In a spirited dissent, Justice Musmanno argued that a dairy company which was primarily at fault in an auto accident, found to have been covered by a release executed in favor of a driver less at fault in the accident, "wants to reap where it did not sow, to build where it owns no land, to dance where it paid no fiddler, to milk where it fed no cow." *Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764, 766 (1961) (Musmanno, J., dissenting). Almost twenty years later, Justice Larsen agreed, arguing that "The practical effect of the majority's decision is to further encourage deceptive practices when negotiating settlements and releases. I believe that, as a matter of public policy, a release should not inure to the benefit of third parties who took no part in the settlement negotiations." *Wolbach v. Fay,* 488 Pa. 239, 412 A.2d 487, 489 (1980) (Larsen, J., dissenting).

Judge Brosky has provided perhaps the most thoughtful critique of the *Buttermore* line of cases, pointing out that the policy arguments advanced in *Buttermore* have little force when applied to third parties who did not contribute consideration, bargain for the release, or sign the document. *See Holmes v. Lankenau Hospital,* 426 Pa.Super. 452, 627 A.2d 763, 770 (1993) (Brosky, J., concurring, reluctantly), *allocatur denied,* 538 Pa. 671, 649 A.2d 673 (1994). He notes that noncontracting parties asserting a release as a defense are essentially asserting a third party benefit. "Yet when the caselaw regarding third party beneficiaries is reviewed you find that these contracts are rather restrictively enforced." *Id.*

Regardless of what one might see as the persuasiveness of these arguments, the Pennsylvania Supreme Court has recently reaffirmed the reach of the *Buttermore* line of cases, rejecting an attempt by the Superior Court to soften its harsh effects. The Superior Court had generalized from two of its earlier cases[3] that, "although the terms of a general release may be broadly interpreted

---

**2.** Pennsylvania law applies to this diversity action involving Pennsylvania real estate.

**3.** These cases were *Sparler v. Fireman's Insurance Co. of Newark, N.J.,* 360 Pa.Super. 597, 521 A.2d 433, 437 (1987) ("We conclude that in the absence of unequivocal language to the contrary, a general release of a third party tortfeasor will not be held to discharge the separate contractual obligation of an insurance carrier to provide underinsurance benefits."), *allocatur denied,* 518 Pa. 613, 540 A.2d 535 (1988), and *Farrell v. Lechmanik, Inc.,* 417 Pa.Super. 172, 611 A.2d 1322 (1992).

even to include unnamed parties, it may only serve to release those persons who might reasonably be considered to be within the ambit of responsibility under the asserted and released cause of action." *Republic Insurance Co. v. Paul Davis Systems of Pittsburgh South, Inc.,* 431 Pa.Super. 30, 635 A.2d 1056, 1058 (1993). In reversing this decision, the Supreme Court reaffirmed that the standard announced in *Buttermore* is the law.

> When the parties agree not to sue each other or anyone else for a given event, it is well recognized that this can provide a discharge of others ... who have not contributed consideration for the release. This is true notwithstanding the fact that the language of the release is general, releasing for example "any and all other persons," rather than specifically naming the persons released.

*Republic Insurance Co. v. Paul Davis Systems of Pittsburgh South, Inc.,* 543 Pa. 186, 670 A.2d 614, 615 (1995).

### Effect of the General Mutual Release

I now turn to analysis of the General Mutual Release signed by Crestar. The test in this summary judgment motion, of course, is whether the documents before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.Rule Civ.P. 56(c). S & K must establish that the ordinary language of the release unambiguously releases third parties in the position of S & K from liability. If this is the case, the release will be valid and will be enforced against Crestar, absent fraud or mutual mistake.

Defendants argue that Crestar's claim against S & K is barred by the language in the Release releasing "all other persons ... of and from all manner of actions ... claims and demands arising directly or indirectly out of the claims made in [Civil Action No. 91–7990] or which were or could have been asserted in the Civil Action...." This language raises two issues: who is released, and what claims are released. In order for S & K to prevail, they must establish both that the phrase "all other persons" applies to them, and that Crestar's legal malpractice

cause of action either arises directly or indirectly out of the claims in the earlier action or could have been asserted in that action.

### Who Is Released

■ In order to determine which persons are covered by the General Mutual Release, I must construe the phrase "and all other persons" in the releasing language, repeated here for convenience:

> [T]he parties hereto, their parents, subsidiaries, affiliates, officers, directors, shareholders, agents, servants, employees, successors, and assigns ("Releasors") do hereby remise, release, and forever discharge each other, as well as each of their respective parents, subsidiaries, affiliates, officers, directors, shareholders, agents, servants, employees, successors, and assigns, *and all other persons* (collectively referred to hereafter as "Releasees").... [Emphasis added.]

S & K argue that the phrase "all other persons" should be construed to mean persons other than the parties and their various listed privies. They point out that the description of the Releasees immediately preceding this phrase ("each other, as well as each of their respective parents, subsidiaries, ..., and assigns") is identical to the language identifying the Releasors. That is, the Releasors (the parties and their privies) are reciprocally releasing the Releasors (again, the parties and their privies), as well as all other persons. "All other persons" must therefore mean all persons other than the Releasors.

The specific exclusions in the Release lend weight to this argument. The Release explicitly excludes Gottfried and National from its coverage and, more significantly, excludes claims between Peoples, Berger, and Unity and their counsel (Mark C. Clemm, Esquire, and Cutler, Clemm & Morris, P.C.). These provisions would be unnecessary unless the phrase "all other persons" applies to non-releasing parties such as Gottfried, National, and Peoples's, Berger's, and Unity's counsel.

Indeed, the explicit exclusion of whatever claims Peoples, Berger, and Unity may have had against their counsel must have put Crestar on notice that the language of the

release might cover Crestar's claims against its own former counsel. Peoples, Berger, and Unity apparently recognized this possible interpretation of the language, and explicitly excluded disputes with their counsel from the Release's coverage; Crestar did not. The clear implication is that "all other persons" is a broad provision sweeping in outside parties, and only those not to be swept in were expressly excluded.

Crestar argues that the phrase "all other persons" simply adds to the list of people or entities associated with the releasing parties. Under this reading, "all other persons" means "all other persons in a similar relationship to the releasors as their parents, subsidiaries, affiliates, officers, directors, shareholders, agents, servants, employees, successors, and assigns." The trouble with this argument is that it makes the explicit exclusion of claims against Gottfried and National entirely unnecessary, contravening the familiar rule that all provisions of contracts should, if possible, be given effect. *See J.E. Faltin Motor Transportation, Inc. v. Eazor Express, Inc.*, 273 F.2d 444 (3d Cir.1959). In addition, as mentioned above, the more natural reading of the sentence is that the parties and their privies (the releasors) are releasing the parties and their privies (the releasors again), as well as all other persons. If the drafters had intended to release only other persons associated with the parties, they would more naturally have written "and all other *such* persons." [4]

For these reasons, I find that S & K were within the class of persons released by the General Mutual Release.

*What Claims Are Released*

I turn then to the issue of what claims are within the scope of the General Mutual Release. The release covers "all ... causes of action, ... claims and demands arising directly or indirectly out of the claims made in [Civil Action No. 91–7990] or which could have been asserted in the Civil Action,

whether in law or in equity." I find that (1) the claims against S & K arise directly or indirectly out of the claims in the Peoples action, and (2) that they could have been asserted in that action.

■ The first of these inquiries is one of causation: whether the claims against S & K were caused directly or indirectly by the claims in the Peoples action. It seems clear that the answer is "yes." Borrowing some familiar tests from tort law, it is apparent that the claims alleged in the Peoples action were both the cause in fact and the proximate cause of the S & K action.

The cause-in-fact test is straightforward: but for the alleged fraudulent acts of Peoples, Unity, Scheier, Chowdhury, and Stewart, Crestar presumably would not have purchased the Gottfried mortgage, and so would have had no occasion to hire S & K to foreclose on this mortgage.

There is a like ground for concluding that the damages stemming from S & K's alleged malpractice were proximately caused by the acts alleged in the Peoples action. S & K's actions (or inaction) can be seen as a form of negligent rescue: the acts alleged in the Peoples action put Crestar in a position where it needed assistance in stanching its losses; it turned to S & K for this assistance, and its damages allegedly were exacerbated. In analogous situations, where a plaintiff's injuries are physical rather than financial, tortfeasors are routinely held to have proximately caused damages stemming from negligent rescue. *See Restatement (Second) of Torts* § 457 ("If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.") S & K's actions here were likewise "normal efforts of third persons in ren-

---

4. Crestar might argue that the scope of the release does not include disputes between the parties and their counsel; that is, the release only addresses claims against outside parties, not internecine disputes between a party and its agents. Such an implied "internecine disputes" exception would not assist Crestar, however, be-

cause Crestar and S & K had already become adverse at the time the release was signed. Crestar's complaint in this action was filed in the Pennsylvania Court of Common Pleas on July 6, 1994; the General Mutual Release was signed in mid–1995.

dering aid which [Crestar's] injury reasonably require[d]." By analogy, it is proper to say that the damages allegedly caused by S & K had their proximate origin in the claims alleged in the Peoples action, and therefore that the S & K action arose directly or indirectly from the Peoples action.

■ Crestar could also have asserted its claims against S & K in its Peoples action. The Federal Rules of Civil Procedure authorize joinder of multiple defendants,

> if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a). Crestar's right to relief from S & K arose out of the Peoples transaction in that, as discussed above, but for the Peoples transaction, Crestar would not have acquired the Gottfried mortgage and had need of foreclosure counsel. The terms of the Gottfried mortgage and the value of the Paoli property when sold by Crestar are common questions of fact in the Peoples and S & K actions, because both are necessary for computing damages in the respective actions. For these reasons, Crestar could have joined S & K in the Peoples action, and added its claims against S & K as Count XIX.[5] *See, e.g., McNeil v. American Export Lines, Inc.,* 166 F.Supp. 427, 428 (E.D.Pa. 1958) (holding that two defendants were properly joined under Rule 20 where plaintiff's injuries, sustained while he was under the employ of one defendant, were aggravated while he was employed by the other defendant).

The one case cited by Crestar in support of its argument that the Release does not cover its claim against S & K is of no assistance here. The release at issue in *Harrity v. Medical College of Pennsylvania Hospital,*

439 Pa.Super. 10, 653 A.2d 5 (1994), *allocatur denied,* Table, No. 0168, E.D.Alloc., June 21, 1995, was limited to claims "for which suit was brought" in a former action. *Id.* 653 A.2d at 10. The Superior Court found that the release only applied to the specific claims brought in the earlier action. The language in the General Mutual Release at issue in this case is significantly more sweeping in describing which claims are released.

■ Having concluded that, by the terms of the General Mutual Release, Crestar has released S & K from liability for its alleged malpractice, I turn to Crestar's alternative argument that this result stemmed from an accident or mistake and should therefore not be enforced. *See Republic Insurance Co. v. Paul Davis Systems of Pittsburgh South, Inc.,* 543 Pa. 186, 670 A.2d 614, 615 (1995) (" 'However improvident their agreement may be or subsequently prove for either party, their agreement, *absent fraud, accident or mutual mistake,* is the law of their case.' ") (quoting *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733, 735 (1989)) (emphasis added). In support of this assertion, Crestar provides three affidavits: one by Sterling Edmunds, Jr., its Executive Vice President, who signed the release; one by Tina Nugent, the lawyer representing Crestar in its lawsuit against Peoples; and one by Richard K. Doty, counsel for Audrey Scheier in the Peoples action. The two attorneys' affidavits state that the parties to the Peoples settlement negotiation did not discuss whether non-signing parties would be covered by the Release. All three affidavits state that the affiant did not personally intend that the Release include Crestar's action against S & K within its scope, and that if the Release is construed to cover non-signing parties, then such releasing language was included by accident and mistake.

In response, S & K offers affidavits of Joseph B. Mayers, counsel for Roy Chowd-

---

**5.** Crestar argues that because its claims against S & K had not accrued at the time it filed its Peoples complaint in 1991, it could not have joined S & K in that action. This argument is without merit because Crestar could have amended its complaint at a later time. *See* Fed. Rule Civ.P. 15(a). Its cause of action against S & K had arisen by November 1993 at the latest,

when counsel for Crestar advised S & K of its legal malpractice claim. *See* Letter from Tina L. Nugent, Esq., to Shapiro & Kreisman, Defs.' Reply to Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Exhibit C. The General Mutual Release in the Peoples action was signed in mid–1995.

hury in the Peoples lawsuit, and Mark C. Clemm, counsel for Peoples and Jay Berger. Mr. Mayers states that the terms of the General Release were subject to negotiation and that it is his practice to insist upon releasing language sufficient to protect his clients from claims of contribution or indemnity. Mr. Clemm makes the same assertions, and adds that his intent in preparing the initial draft of the General Mutual Release was to obtain as broad a release as possible.

■■■ A party asserting mutual mistake must show that a mistake was made by *all* parties to the release. *See* 8 *Pennsylvania Law Encyclopedia* § 84 ("A mutual mistake is one common to both or all parties . . ."). *Cf. Miller v. Houseworth,* 387 Pa. 346, 127 A.2d 742, 744 (1956) ("A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution.") (citations omitted). In addition, "[r]eformation of the release would require a showing of . . . mutual mistake by clear, precise, and convincing evidence." *Wolbach v. Fay,* 488 Pa. 239, 412 A.2d 487, 488 (1980).

Crestar has not made any assertion that all of the parties to the General Mutual Release were mistaken as to its legal effect; it has only asserted that some of the parties were mistaken. Moreover, S & K have provided sworn affidavits indicating that at least three of the parties to the Release were *not* mistaken as to its meaning. There is therefore no genuine issue of material fact warranting the denial of summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986) ("In such a situation, there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") *See also Smith v. Thomas Jefferson University Hospital,* 424 Pa.Super. 41, 621 A.2d 1030, 1032 *allocatur denied,* 535 Pa. 638, 631 A.2d 1009 (1993) (upholding judgment on the pleadings against a claim of

mutual mistake where appellant failed to adduce evidence of a mistake on the part of the other party to a release).

For the foregoing reasons, S & K's motion for summary judgment will be granted. An appropriate order accompanies this memorandum.

Pursuant to the memorandum accompanying this order, it is hereby ORDERED that:

1. The Stipulation between plaintiff and defendants to amend defendants' affirmative defenses to set forth the affirmative defense of release, dated January 12, 1996, is APPROVED.

2. Upon consideration of Defendants', Gerald Shapiro, Esquire, David Kreisman, Esquire and Shapiro & Kreisman's Motion for Summary Judgment, and Plaintiff's response thereto, defendants' motion for summary judgment is GRANTED.