**TRANSPORTATION INSURANCE COMPANY, Plaintiff,**

v.

**SPRING–DEL ASSOCIATES, Defendant, Third Party Plaintiff,**

v.

**Kat–Man–Du Corporation, Third Party Defendant.**

**No. CIV. A. 99–CV–1865.**

United States District Court, E.D. Pennsylvania.

April 3, 2001.

**MEMORANDUM**

ROBERT F. KELLY, District Judge.

This Motion for partial reconsideration, filed by Plaintiff, Transportation Insurance Company ("Transportation"), arises from this Court's Order dated November 28, 2000, granting summary judgment in favor of Spring–Del Associates ("Spring–Del") with regard to the claims asserted by Transportation as subrogee of Waterfront Renaissance Associates ("WRA"), which included claims for contractual and common law indemnity. The summary judgment Order and the underlying action arose out of the settlement of a lawsuit filed by Stephen Middleton ("Mr. Middleton") after he was struck by a drunk driver while walking along Delaware Avenue in Philadelphia, Pennsylvania. For the reasons that follow, Transportation's Motion for partial reconsideration is denied.

## I. BACKGROUND.

Transportation issued a commercial general liability insurance policy naming WRA and other parties as insureds. WRA owned property covered by the insurance policy on Delaware Avenue in Philadelphia, Pennsylvania which was leased in part to Spring–Del. On April 4, 1994, while Mr. Middleton walked along Delaware Avenue at 1:30 a.m. near the leased property, he was hit by a speeding drunk driver and was seriously injured. He and his wife filed a negligence suit (the "Mid-

dleton suit") against Transportation's insureds and Spring–Del.

On May 2, 1995, WRA was served with a writ of summons in the Middleton suit. On May 31, 1995, WRA and Spring–Del entered into a release which stated:

Know all men by these presents that Waterfront Renaissance Associates, L.P. c/o Carl Marks & Co., Inc. 135 East 57th St., New York N.Y. 10022 for and in consideration of Two thousand seven hundred seventy-six dollars and sixty one cents ($2,766.61) do hereby remise, release, and forever discharge Spring–Del Associates a Pennsylvania General Partnership, its partners, and its agent U.S. Realty Associates, Inc., their heirs, executors and administrators (or its successors and assigns), of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, especially any and all claims arising, concerning, or with regard to those two certain Lease Agreements between Waterfront Renaissance Associates, L.P. as Lessor and Spring–Del Associates as Lessee dated November 1, 1989 and May 1, 1990 respectively for those two certain parking lots at the southwest corner of Delaware Avenue and Noble Street, Philadelphia, Pennsylvania.

Which against the said Spring–Del Associates, its partners, and its agent U.S. Realty Associates, Inc., ever had, now has (or have), or which their heirs, executors, administrators, successors or assigns or any of them, hereafter can, shall or may have, for or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of these presents.

Release Agreement, Pl.'s Resp. to Mot. for Summ. J., Ex. J.

Transportation's insureds notified Transportation of the Middleton suit, and Transportation defended its insureds in that action. WRA tendered the defense of the Middleton suit to Spring–Del, but Spring–Del rejected the tender. Various defendants settled out of the Middleton suit and obtained releases from the plaintiffs. Spring–Del was released for $100,000 and Transportation's insureds were released for $1,500,000, of which Transportation funded $1,000,000. Transportation also incurred $200,000 in fees and costs in defending the insureds in the Middleton suit. Transportation made payment to the plaintiffs in the Middleton suit on July 21, 1998.

The rights of the insureds for any defense costs and settlement amounts from Spring–Del were transferred to Transportation pursuant to the insurance policy. Because Spring–Del refused to assume the defense of WRA and refused to indemnify WRA, Transportation, as subrogee of WRA, filed a complaint seeking indemnity from Spring–Del on April 14, 1999 in this Court. On May 11, 2000 Spring–Del filed a Motion for summary judgment regarding the claims asserted by Transportation, as subrogee of WRA, which included claims for contractual and common law indemnity. On November 28, 2000, this Court granted Spring–Del's Motion. On December 4, 2000, Transportation filed the current Motion for partial reconsideration of the November 28, 2000 Order regarding the claims for contractual and common law indemnity.

## II. STANDARD OF REVIEW.

A motion for reconsideration is appropriate only where: (1) there has been an intervening change in controlling law; (2) new evidence is available; or (3) there is need to correct a clear error of law or prevent manifest injustice. *N. River Ins.*

*Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3rd Cir.1995). However, such motions should only be granted sparingly. *Armstrong v. Reisman,* No. 99–4188, 2000 WL 288243, at *2 (E.D.Pa. Mar.7, 2000).

## III. *DISCUSSION.*

This Court granted summary judgment on November 28, 2000, in favor of Spring–Del on Transportation's claims, as subrogee of WRA, for contractual and common law indemnity against Spring–Del. *Transp. Ins. Co. v. Spring–Del Assocs.,* No. 99–1865, 2000 WL 1751090 (E.D.Pa. Nov.28, 2000). This Court found that the language of the unambiguous release entered into between WRA and Spring–Del on May 31, 1995 was so broad and general that it released Spring–Del from all possible liability arising from the leased premises, including the claims for indemnity by Transportation as subrogee of WRA. *Id.* at *4. This Court also found that WRA was aware of the Middleton claims against it when it signed the release, since it was served with a writ of summons in the Middleton suit on May 2, 1995 and signed the release approximately four weeks later. *Id.*

■ Transportation argues that this decision was in clear error of established Pennsylvania law. In its Motion for Partial Reconsideration, Transportation reasserts an argument first raised in its Response and reply briefs against summary judgment which the Court did not expressly discuss in its November 28, 2000 Opinion. Transportation asks this Court to reconsider its Order based on this argument, or in the alternative, to clarify its Order by specifically addressing the argument. This Court cannot conclude that its earlier reasoning was a clear error of law. Parties to a contract may enter into whatever agreement they desire, no matter how imprudent, and they will be bound by that contract. *Mellon Bank, N.A. v. Aetna*

*Bus. Credit,* 619 F.2d 1001, 1009 (3d Cir. 1980). Here, Spring–Del and WRA entered into a very broad general release, and they, and Transportation as subrogee, are bound by it. Furthermore, Transportation's current argument is also unpersuasive because it does not adequately address the full reasoning behind the rules of law that it espouses. *See* sections III.A. and III.B., *infra.* However, because this Court will not grant reconsideration, this Court will address Transportation's argument.

■ At first glance, Transportation's current argument is attractive in its simplicity. However, upon closer examination, the argument is flawed. Transportation weaves together two propositions of law, arising from two separate lines of cases, in order to argue that Spring–Del must indemnify it. The first proposition is that claims for indemnification do not accrue until payment is made to an injured third party. *Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel,* 832 F.Supp. 922, 931 (E.D.Pa.1993); *Rivera v. Phila. Theological Seminary of St. Charles Borromeo,* 510 Pa. 1, 507 A.2d 1, 14 (1986); *McClure v. Deerland Corp.,* 401 Pa.Super. 226, 585 A.2d 19, 22 (1991). The second proposition is that general words of release will not bar a claim that has not accrued at the date of the release. *Bunnion v. Consolidated Rail Corp.,* 108 F.Supp.2d 403, 411 (E.D.Pa.1999), *affirmed* 230 F.3d 1348 (3rd Cir.2000); *Youngren v. Presque Isle Orthopedic Group,* 876 F.Supp. 76, 79 (W.D.Pa.1995); *Restifo v. McDonald,* 426 Pa. 5, 230 A.2d 199, 201 (1967); *Vaughn v. Didizian,* 436 Pa.Super. 436, 648 A.2d 38, 40 (1994). Therefore, Transportation argues that read together, these statements of law stand for the proposition that, regardless of how broadly the release was worded, the release cannot bar the indemnity claims because those claims did not accrue

until payment was made on July 28, 1998, three years after the date the release was signed.

### A. *When Claims for Indemnification Accrue*

■ Under Pennsylvania law, a claim for indemnification does not fully accrue until payment is made to the injured party. *Rubin Quinn*, 832 F.Supp. at 934–935 (determining that the indemnity claim was not beyond the statute of limitations because the claim had not accrued until it was paid); *Rivera*, 507 A.2d. at 14 (finding that an implied contract to indemnify cannot come into existence until the party seeking indemnity has been found liable to the plaintiff and has discharged the obligation arising from the liability); *McClure*, 585 A.2d at 22–23 (finding an indemnity claim premature because the underlying actions were not resolved, and therefore, it was impossible to determine the basis of the claims, and whether they were within the scope of the indemnity clause). However, *Rubin Quinn*, *Rivera* and *McClure*, cited by Transportation, do not resemble the current case. In these cases, the courts were only concerned with whether the indemnity claims were fully ripe or enforceable. Here, we are concerned with whether possible indemnity claims arising from a negligence suit, of which the parties were aware, are included in the broad wording of a release entered into between the parties. Therefore the findings in these cases are not directly applicable to the case at bar. However, these cases do state as a general proposition, that a claim for indemnification does not fully accrue for all purposes until payment is made to the injured third party.

### B. *Whether the General Words of a Release May Bar a Claim that Has Not Accrued*

The second rule of law that Transportation recites, that general words of release will not bar a claim that has not accrued at the date of the release, does not reveal the whole truth behind the rule. Transportation relies heavily on *Youngren*, 876 F.Supp. 76, *Restifo*, 426 Pa. 5, 230 A.2d 199 and *Vaughn*, 436 Pa.Super. 436, 648 A.2d 38 for support of its proposition. However, in every one of these cases, the above sentence is preceded by, and coupled with, another sentence which explains the reasoning behind the rule. In *Youngren*, the court stated:

> [t]he courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the parties when the release was given. Furthermore, under Pennsylvania law it is well settled that releases are strictly construed so as not to bar the enforcement of a claim which had not accrued at the date of the execution of the release.

*Youngren*, 876 F.Supp. at 79 (internal quotation and citations omitted). In *Restifo*, the court stated that:

> [a] long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given. Accordingly, the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of the release.

*Restifo*, 230 A.2d at 201. Lastly, in *Vaughn*, the court stated:

> [t]he courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the parties when the release

was given. Moreover, releases are strictly construed so as not to bar the enforcement of a claim which had not accrued at the date of the execution of the release.

*Vaughn,* 648 A.2d at 40 (internal quotation and citations omitted). In each of these cases cited by Transportation, the sentence preceding the one utilized by Transportation explains that the reason unaccrued claims are not generally barred by releases is that a release only covers matters that were within the contemplation of the parties at the time of the release. The courts seem to infer that claims that have not accrued will not have been within the contemplation of the parties. *Youngren,* 876 F.Supp. at 79; *Restifo,* 230 A.2d at 201; *Vaughn,* 648 A.2d at 40. The basic reasoning behind the rule appears to be that it would be unfair for a release to bar claims that could not possibly have been contemplated or foreseen by the parties. *Restifo,* 230 A.2d at 201. Specifically, the rule prevents the releasor from being overreached. *Id.* The court in *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885 (3rd Cir.1975), explained the rule well in stating that:

> [i]t is true that ordinarily the words of a release should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated. Thus, general words of a release will not usually be construed to bar a claim which had not accrued at the date of the execution of the release, nor a claim, the existence of which was not known to the party giving the release. But, the rule is merely one of construction, and is never applicable to bar a claim where the very language used by the parties excludes its use for that purpose.

*Three Rivers Motors Co.,* 522 F.2d at 895–896 (internal quotations and citations omitted).

The facts in *Youngren, Vaughn* and *Restifo* serve as examples of circumstances that would render a general release impotent against an unaccrued claim that was not contemplated by the parties at the time the release was signed. In *Youngren,* following an automobile accident, Dr. Carneval, the defendant, performed surgery on Ms. Youngren. *Youngren,* 876 F.Supp. at 77. Soon after, Ms. Youngren filed a claim against the other driver's insurance company. *Id.* Ms. Youngren accepted a settlement amount from the insurance company and signed a general release form releasing the other driver and "all other persons" from all liability related to the accident. *Id.* A few years later, Ms. Youngren was involved in another automobile accident. *Id.* at 78. At that time, Dr. White, the treating surgeon, discovered that Dr. Carneval had performed surgery on the wrong side of Ms. Youngren's spine. *Id.* Ms. Youngren brought a medical malpractice action against Dr. Carneval. *Id.* Dr. Carneval claimed that the release executed in the first accident shielded him from liability. *Id.* The court disagreed and found that (1) Ms. Youngren's malpractice claim did not arise from the accident covered by the language of the release but rather from a separate injury: the injury caused when Dr. Carneval allegedly performed surgery on the wrong side of her spine, and alternatively that (2) the cause of action did not accrue until after the release was executed. *Id.*

*Vaughn* involved similar facts to *Youngren.* The *Vaughn* court found that a "general release which discharges all known and unknown claims arising as a result of an automobile accident does not bar a medical malpractice action for negligent treatment of injuries sustained in the accident when the medical treatment occurred nine months after the release was executed." *Vaughn,* 648 A.2d at 39. The court reasoned that the parties to the re-

lease could not have anticipated the doctor's negligent surgery. *Id.* at 40–41. Because the doctor's "future negligent treatment was not within the contemplation of the parties, and the malpractice claim had not yet accrued at the date of the execution of the release, the release [did] not encompass this medical malpractice action and cannot be construed so as to bar" the plaintiff's claim. *Id.* at 41.

Lastly, in *Restifo,* Mr. and Mrs. Restifo brought an action on behalf of themselves and their minor children against the estate of the driver of another car for personal injuries and property damage sustained in an automobile accident. *Restifo,* 230 A.2d at 200. The driver's estate joined Mrs. Restifo as an additional defendant with respect to the claims of her minor children on the basis that she was solely liable or liable for contribution. *Id.* In response, Mrs. Restifo claimed protection under a release given to her by the decedent driver which released the plaintiffs from all claims arising from the accident. *Id.* The court found that the parties had not contemplated the contribution claim at the time of the release and that the contribution right did "not accrue until after an action [had] been instituted against the releasor by a third party." *Id.* at 201. The court stated that, "in the circumstances of the instant case such a contract must show that a release of the right to seek contribution was bargained for and within the parties' contemplation. Properly construed, the release involved in the instant litigation merely prohibits recovery on an action which originates with the releasor." *Id.* at 202.

█ Here, WRA received notice of the Middleton suit before it signed the release, since it was served with a writ of summons in that case on May 2, 1995 and signed the release on May 31, 1995. The current case is not a situation, such as in the cases above, where the contracting parties could not have possibly contemplated the unaccrued claim. WRA, after having received notice of the suit, would have had opportunity to consider the liability of Spring–Del, the lessee of its property. Generally, parties are free to bargain for a release of all possible claims, both known and unknown by the parties. *Crestar Mortg. Corp. v. Shapiro,* 937 F.Supp. 453 (E.D.Pa.1996)(stating that absent fraud or mistake, parties may bind themselves to any agreement that they wish); *Brown v. Herman,* 445 Pa.Super. 305, 665 A.2d 504 (1995)(finding that a broadly worded release included future medical malpractice claims). In *Buttermore v. Aliquippa Hosp.,* 522 Pa. 325, 561 A.2d 733 (1989), the court upheld a broad general release that released the defendants from all claims arising from an accident, which were "known or unknown, suspected or unsuspected, past, present and future claims." *Id.* at 734. The court stated that:

> [i]f such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind, no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the Law to permit this release to be circumvented or held to be nugatory.

*Id.* at 735 (quoting *Emery v. Mackiewicz,* 429 Pa. 322, 240 A.2d 68, 70 (1968)); *see also Crestar Mortg. Corp.,* 937 F.Supp. at 456 (quoting *Emery,* 240 A.2d at 70).

■ Under Pennsylvania law, it is also well settled "that where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims." *Three Rivers Motors Co.*, 522 F.2d at 896. Furthermore,

■ [i]f one insists that to settle, the matter must end then and forever, as between them, they are at liberty to do so. They may agree for reasons of their own that they will not sue each other or any one for the event in question. However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case.

■ *Buttermore*, 561 A.2d at 735. Also, "commercial parties are free to contract as they desire." *Mellon Bank, N.A.*, 619 F.2d at 1009 (citing *Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174 (3d Cir.1979)). Moreover, the strongest indicator of agreement between parties to a contract is the words they use in the written contract. *Id.* However, in construing a general release, "it is crucial that a court interpret [the] release so as to discharge only those rights intended to be relinquished. The intent of the parties must be sought from a reading of the entire instrument, as well as from the surrounding conditions and circumstances." *Vaughn*, 648 A.2d at 40.

■ Transportation would have this Court find that it is an unwavering tenet of Pennsylvania law that an indemnity claim that has not fully accrued cannot be barred by a general release. This Court is unable to do as Transportation wishes because the case law does not support this conclusion. In situations where unaccrued claims are not contemplated by the parties, words of a general release will not bar the enforcement of those claims. *Youngren*, 876 F.Supp. at 79; *Restifo*, 230 A.2d at 201; *Vaughn*, 648 A.2d at 40. However, future claims contemplated by the parties to the release may be released. *Three Rivers Motors Co.*, 522 F.2d at 896. In this case, WRA had notice of the Middleton suit almost a month before it entered into the release with Spring–Del. The parties were aware of the possible indemnity claims and therefore, those claims were within their contemplation when they entered into the release. Transportation, as subrogee of WRA, may not now attempt to circumvent the broad language of the general release by utilizing its current argument.

## IV. CONCLUSION

It is true that an indemnity claim fully accrues for all purposes when payment is made to the injured third party. Furthermore, unaccrued claims that were not within the contemplation of the parties when the release was signed are not barred by the release. Conversely, future claims that were within the contemplation of the parties when the release was signed are barred by the release. Here, WRA had notice of the Middleton suit and the possible indemnity claims against Spring–Del almost a month before it entered into the broad general release with Spring–Del. Therefore, the release bars the indemnity claims and summary judgment in favor of Spring–Del on that issue was appropriate. Furthermore, Transportation's current Motion for Partial Reconsideration is denied.

An appropriate Order follows.